# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| PHILLIP MICHAEL VELASQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-00771-KOB-NAD |
| ) | |
| DR. HUGHES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The magistrate judge entered a report on July 24, 2023, recommending that defendant Dr. Amanda Hughes' motion to dismiss be granted. (Doc. 41). Plaintiff Phillip Michael Velasquez filed a written statement that the court construes as timely objections to the report and recommendation.[1] (Doc. 44).

Velasquez's objections fall into two categories. First, he objects to the finding that he failed to exhaust his administrative remedies, because no one at FCI Talladega would provide him with a BP-8 or BP-9 form. (Doc. 44 at 1-2). Velasquez's other objection centers around his claim that he did not receive appropriate mental health counseling services. (*Id.*, at 1).

---

[1] Although not received by the court until August 21, 2023, Velasquez dated his objections August 1, 2023. Under the mailbox rule, Velasquez is entitled to a presumption that his objections were filed on the date he signed them, that being August 1, 2023. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988).

### 1. Velasquez's failure to exhaust his administrative remedies.

Velasquez argues that he could not exhaust his administrative remedies because "any and all BOP staff" refused to provide him with a BP-8 or BP-9 form. (Doc. 44 at 2). But this argument was not what Velasquez alleged in his amended complaint. (*See* doc. 24). There, Velasquez specifically claimed that Hughes told his counselor and the executive staff not to allow Velasquez to have any of the necessary forms, his mail, or his property for approximately 55 days. (*Id.,* at 3). According to Velasquez, "I asked every week for a BP-9, but was told [Hughes] was in charge of all my requests, as I was under her care, and my counselor nor any executive staff making rounds wouldn't give me any forms or mail property. All my request were completely ignored for 55 days or so."[2] (*Id.*).

As explained in the report and recommendation, a prison official's failure to provide administrative grievance forms to an inmate presents a valid reason for that inmate to file an untimely grievance. (*See* doc. 41 at 17-18 (citing 28 C.F.R. § 542.14(b) and *Abram v. Leu*, 848 F. App'x 868, 871 (11th Cir. 2021) (holding that "temporary obstacles that prevent the submission of a timely grievance—such as a … refusal by prison officials to provide the necessary forms—do not make

---

[2] Velasquez asserted his claims stemmed from a sexual assault on April 28, 2021. (Doc. 24 at 3). As noted by the magistrate, 55 days from April 28, 2021, is June 22, 2021, about a month after Velasquez filed his initial complaint in this case. (*See* doc. 41 at 11, n.4).

administrative remedies unavailable where prisoners may request consideration of untimely grievances for good cause.")).

Where a dispute focuses on exhaustion of administrative grievance, the Eleventh Circuit has established a two-step process for courts to apply. *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court considers "the factual allegations in the defendant's motion to dismiss and in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citation omitted). Next, if the defendant is not entitled to have the complaint dismissed at the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citations omitted). The court then "decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Here, Velasquez alleged that Hughes would not let him have any administrative grievance forms for 55 days. (Doc. 24 at 3). Hughes responded that she had nothing to do with grievance forms. (Doc. 30-4 at 8-9). Taking Velasquez's version as true, he fails to provide any basis on which the court could completely waive the administrative exhaustion process. He ignores his own failure to file an administrative grievance after his release from suicide watch in FCI Talladega's

3

SHU in June 2021 or, taking as true the statement in his objections---that no one at FCI Talladega would provide him a BP-8 or BP-9 the entire time he was there---after his transfer to FCI Tucson in October 2021. (*See* doc. 13). Stated another way, even if the court accepted as true that no prison official would provide him a BP-8 or BP-9 form the entire time he was in FCI Talladega, Velasquez continued to fail to pursue his remedies after his transfer to FCI Tucson.[3]

Because exhaustion is mandated by statute, a federal court has no discretion to waive this requirement. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)).

Based on the foregoing, Velasquez's objection is **OVERRULED**.

**2. Velasquez's objections based on the mental health counseling he received.**

---

[3] As required by 28 U.S.C. § 636(b), this court has considered the application of the *Turner* factors through *de novo* review. That review leads to the same conclusion as that of the magistrate judge, specifically that Velasquez fails to demonstrate any basis upon which his failure to exhaust his administrative remedies could be excused. (*See* doc. 41 at 16-19).

In his objections, Velasquez asserts that "[j]ust because [the defendant] stopped by my door does not mean she treated my mental health issues.  Why did I not receive sexual abuse counseling?" (Doc. 44 at 1 (spelling and grammatical errors corrected)).  Velasquez adds that he "filed everything on time, I paid my filing fee in full." (*Id.*) (grammatical corrections added).

First, the fact that Velasquez complied with his legal obligations to timely file pleadings and pay his filing fee means only that the court may reach the merits of his claims, not that he is due to prevail on those claims.  Next, the fact that Velasquez believes he should have received different or additional counseling does not demonstrate that the defendant acted in deliberate indifference to his mental health needs.  Assuming, for purposes of this memorandum opinion only, that the court could excuse Velasquez's failure to exhaust his administrative remedies, the court considers whether the evidence could support a finding of deliberate indifference against Hughes.

In the Eleventh Circuit, a prisoner's right to receive adequate medical treatment encompasses a right to psychiatric and mental healthcare, as well as a right to be protected from self-inflicted injuries, including suicide.[4]  *Belcher v. City of*

---

[4] "The effect of *Bivens* was … to create a remedy against federal officials acting under color of federal law that was analogous to the § 1983 action against state officials …. [t]hus courts generally apply § 1983 law to analyze *Bivens* cases." *Abello v. Rubin*, 63 F.3d 1063, 1065 (11th Cir. 1995); *see also Solliday v. Fed. Officers*, 413 F. App'x 206, 209 (11th Cir. 2011) (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).

*Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994).  For a self-harm case, the plaintiff must show that the official displayed deliberate indifference to the possibility of the prisoner self-inflicting harm.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.,* 402 F.3d 1092, 1115 (11th Cir. 2005).

For deliberate indifference by a prison official, a plaintiff must show: (1) he had an objectively serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) a causal connection between that indifference and the plaintiff's injury.  *Wade v. United States,* 13 F.4th 1217, 1225 (11th Cir. 2021).  To establish deliberate indifference, a plaintiff must demonstrate that the prison official "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  As with all prisoner medical care, "mental health care is not constitutionally required to be perfect, the best obtainable, or even very good."  *Id*., at 1510.

The evidence before this court demonstrated that Velasquez was seen by Psychology Services professionals on April 28, April 29 (when he was placed on suicide watch), April 30, May 1, May 2, May 3, May 4 (when he was removed from suicide watch), and May 5.  (Doc. 30-4 at 5-6; Doc. 30-3 at 133-35, 137-38; 142-46,

6

148-50, 152).   Velasquez was then seen May 11, May 12, May 14, May 18, and May 24 (when Psychology Services was called by SHU staff because Velasquez threatened self-harm).   (Doc. 30-4 at 6-7; Doc. 30-3 at 125-126, 128-132). Psychology Services staff also saw Velasquez on June 1, June 8, June 11, June 24, and June 29.[5]  (Doc. 30-4 at 8, Doc. 30-3 at 119-124).

Dr. Hughes personally saw Velasquez again on July 15, 2021, at his request; on August 31, 2021, when Velasquez reported he swallowed a battery; on September 3, 2021, when Velasquez announced he was suicidal; on September 9, 2021, when Velasquez made suicidal statements, and on October 6, 2021.  (Doc. 30-3 at 56, 75-84, 117; Doc. 30-4 at 8).   During this same time period, Velasquez also was seen multiple times by other members of the Psychology Services staff.  (Doc. 30-3 at 58-74, 78-83, 86-91, 101-118).

In the face of the foregoing, Velasquez asserts in his objections that "Amanda Hughes is an evil woman"; that "[t]his isn't a joke I took money I didn't have to file this on Amanda Hughes, she is dead wrong for what she did.  I struggle with anger issues due to her actions."; and that "I never once went to any group, she's lying."

---

[5] On June 8, 2021, Hughes saw Velasquez at his request.  (Doc. 30-3 at 122).  He related that he was "frustrated over not being released from SHU after refusing to be released the week before." (*Id*.).  On June 29, 2021, Hughes asked Velasquez if he wanted to participate in "the Challenge Program," although it would require that he transfer to a USP that offered it.  (*Id*., at 119).  Hughes recorded that Velasquez was interested and "appeared excited about the possibility of transferring and participating."  (*Id*.).

7

(Doc. 44 at 1). Nothing in these statements provides any basis on which a reasonable trier of fact could find the counseling and other treatment Velasquez received were so far outside the bounds of reasonableness that he could establish deliberate indifference. Velasquez fails to address the abundance of records demonstrating he saw mental health specialists sometimes daily and certainly regularly from April 28 until his transfer from FCI Talladega in October 2021.

In fact, Velasquez admitted that he saw Dr. Hughes multiple times, but cryptically added "that's mostly before the situation happened." (Doc. 34 at 2). Yet all of Velasquez's claims are directed at events post-dating April 28, and the treatment records in evidence reflect that Dr. Hughes and other Psychology Services staff saw Velasquez more than 20 times between April 28 and his October transfer to USP Tucson, including "thirteen (13) previous Suicide Risk Assessments (SRAs)." (Doc. 30-3 at 41; *see also id.*, at 60, 63, 66, 71, 75, 78, 81, 84, 96, 105, 125, 133, and 148).

Despite the extensive records of his mental health treatment, Velasquez bases his objection solely on his belief he should have received counseling for sexual abuse rather than being placed on suicide watch. (*See* doc. 44 at 1). But that allegation does not support a claim of deliberate indifference. "Measured against the evidence from his medical records … Plaintiff's conclusory allegations that his treatment was insufficient do not create a genuine issue of material fact." *Rutledge v. Alabama,*

8

724 F. App'x 731, 736 (11th Cir. 2018) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533-34 (11th Cir. 1990)).

The question of whether additional forms of treatment or medication should have been employed, "'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle v. Gamble,* 429 U.S. 97, 107 (1976)); *see also Hamm v. DeKalb Cty.,* 774 F.2d 1567, 1575 (11th Cir. 1995) (explaining that, where an inmate received significant medical care, a mere desire for a different method of treatment does not usually amount to deliberate indifference).

Instead, the relevant question for deliberate indifference is not "whether, in the best of all possible worlds" a certain course of treatment would be followed, but whether the treatment provided to inmates "is so reckless—so conscience-shocking—that it violates the Constitution." *Hoffer v. Sec'y, Fla, Dept. of Corr.,* 973 F.3d 1263, 1271-72 (11th Cir. 2020). In other word, deliberate indifference requires "obduracy and wantonness---a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." *Stone v. Hendry*, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting *Whitley v. Albers,* 475 U.S 312, 319 (1986)).

Based on the foregoing, even if Velasquez's failure to exhaust his administrative remedies could be excused, no evidence before this court could

9

support a finding that defendant Hughes' failure to provide Velasquez with sexual abuse counseling rose to the level of deliberate indifference to his mental health.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and Velasquez's objections, the court **OVERRULES** the objections, **ADOPTS** the magistrate judge's report, and **ACCEPTS** the recommendation.  Accordingly, the court shall **ORDER** that the defendant's motion to dismiss be **GRANTED**.

A Final Judgment will be entered.

**DONE** and **ORDERED** this 29th day of September, 2023.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE